IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| ROBERT A. DUNNAM, III, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 3:07CV322-HEH |
| | ) |
| SPORTSSTUFF, INC., *et al.*, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION**
(Granting Defendant Overton's Motion to Stay Proceedings)

This is a product liability case between diverse parties. Defendant Sportsstuff filed for bankruptcy protection pursuant to Chapter 11 on December 31, 2007 which automatically stayed proceedings as to it. This matter is now before the Court on Defendant Overton's Motion to Stay Proceedings, filed on January 3, 2008. The Court will dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court, and argument would not aid in the decisional process. For the reasons stated herein, the Court will grant Defendant Overton's Motion to Stay Proceedings.

**I. Background**

Sportsstuff is a Nebraska-based manufacturer of recreational marine products that are sold through retailers in 21 states. Sportsstuff manufactured and marketed the Wego Kite Tube, a 10-foot-wide, circular, yellow, inflatable watercraft designed to be towed behind a power boat. The tube is intended to become airborne when the rider pulls on handles attached to the floor of the tube. On April 23, 2006, Plaintiff Robert A. Dunnam III was allegedly riding a Wego Kite Tube on the John H. Kerr Reservoir in Mecklenburg County when he sustained permanent injuries. The tube in question was purchased from

1

Overton's, a North Carolina-based marine and watersports retailer, and was towed behind a boat operated by Alfred K. Moore.

Dunnam filed suit in this Court on June 4, 2007 against Sportsstuff and Overton's. The Complaint contains four counts. Count I accuses Sportsstuff and Overton's of breaching the implied warranty of merchantability, and Count II alleges that Sportsstuff and Overton's breached an express warranty. Count III alleges that Sportsstuff negligently designed the Wego Kite Tube, failed to provide adequate warnings with the Wego Kite Tube, and failed to conduct reasonable testing of the Wego Kite Tube before making it available to the market. Count IV re-alleges all allegations under the Rules of Admiralty. Dunnam seeks $4,000,000 in damages.

Dunnam's Complaint immediately spurred several satellite suits. Before distributing the Wego Kite Tube, Overton's obtained an indemnity agreement from Sportsstuff. Sportsstuff had agreed to defend and indemnify Overton's for claims arising out of the design or manufacture of the Wego Kite Tube. Overton's filed a cross-claim against Sportsstuff on July 17, 2007 seeking enforcement of the indemnity agreement. Sportsstuff responded by filing a cross-claim alleging that Dunnam's injuries were the result of Overton's negligence and seeking equitable indemnification and contribution from Overton's. Sportsstuff was granted leave to file a third party complaint against Alfred K. Moore, the driver of the boat at the time of Dunnam's injuries, on September 5, 2007.

Dunnam is apparently just one of many plaintiffs nationwide who claims they were injured seriously while riding a Wego Kite Tube. A press release from the Consumer Product Safety Commission, dated July 16, 2007, reported that at least 39 people had been injured in connection with the Wego Kite Tube, two fatally, and that Sportsstuff had recalled 19,000 tubes. Not surprisingly, litigation ensued. Sportsstuff was quickly overwhelmed by the rising costs of defending itself in the pending lawsuits. The company filed for bankruptcy protection under Chapter 11 on December 31, 2007 in the

United States Bankruptcy Court for the District of Nebraska.

Sportsstuff filed a Suggestion of Bankruptcy in this Court on January 2, 2008 which automatically stayed the proceedings as to them in accordance with 11 U.S.C. § 362. Overton's moved soon thereafter to stay the entire case citing the Fourth Circuit's decision in *A.H. Robbins Co., Inc. v. Piccinin*, 788 F.2d 994 (4th Cir. 1986). Dunnam opposes the stay and wishes to move forward against Overton's.

### III. Analysis

Section 362(a)(1) of Chapter 11 of the United States Bankruptcy Code imposes an automatic stay on all judicial proceedings against a debtor that has filed for bankruptcy protection. The underlying purpose of an automatic stay is "to protect the debtor from an uncontrollable scramble for its assets in a number of uncoordinated proceedings in different courts, to preclude one creditor from pursuing a remedy to the disadvantage of other creditors, and to provide the debtor and its executives with a reasonable respite from protracted litigation, during which they may have an opportunity to formulate a plan of reorganization for the debtor." *Piccinin*, 788 F.2d at 998.

All parties agree, as they must, that § 362(a)(1) automatically stays the proceedings against Sportsstuff. Overton's argues, however, that § 362(a)(1) further mandates that the case against it should be stayed as well. The basis for Overton's argument is the Fourth Circuit's holding in *Piccinin*. That case involved A.H. Robbins, the embattled manufacturer of the Dalkon Shield contraceptive device which spurred 5,000 product liability suits. Co-defendants were named in approximately half of the suits against A.H. Robbins. After the manufacturer filed for bankruptcy and received a stay on all proceedings pursuant to § 362(a)(1), frustrated plaintiffs wished to proceed against the co-defendants. *Piccinin* came before the court when A.H. Robbins sought to have the proceedings against it's co-defendants stayed as well.

While acknowledging that the mandatory stay provision of § 362(a)(1) is generally available only to the debtor, the Fourth Circuit held in *Piccinin* that proceedings against a

3

non-bankrupt co-defendant may also be stayed in "unusual circumstances." 788 F.2d at 999. Unusual circumstances exist sufficient to warrant a stay when "there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant," so that "a judgment against the third-party defendant will in effect be a judgment or finding against the debtor." *Id.; See also Kreisler v. Goldberg*, 478 F.3d 209, 213 (4th Cir. 2006). The Fourth Circuit gave as an example "a suit against a third-party who is entitled to absolute indemnity by the debtor on account of any judgment that might result against them in the case." *Piccinin*, 788 F.2d at 999. The court noted that refusing to apply a stay where "a debtor and nondebtor are so bound by . . . contract that the liability of the nondebtor is imputed to the debtor by operation of law" would frustrate "the very purpose and intent of the statute." *Id.*

The circumstances in this case mirror closely the illustration provided by the Fourth Circuit in *Piccinin* and the facts in *Piccinin* itself. Dunnam's Complaint contains causes of action for breach of implied warranty, breach of express warranty, negligence, and a claim in admiralty. The negligence claim is brought against Sportsstuff alone. The remaining three claims are brought against Sportsstuff and Overton's. The three claims in which Overton's is named are based only on its sale of the Wego Kite Tube. There are no independent allegations of wrongdoing or negligence by Overton's. The indemnity agreement between Overton's and Sportsstuff unambiguously states that Sportsstuff will indemnify Overton's against any action against it arising out of the "design, manufacture, [Sportsstuff's] warranties, [Sportsstuff's] representations, the distribution, sale, or use" of the Wego Kite Tube.

The indemnity agreement between Sposrtsstuff and Overton's appears valid on its face and any judgment against Overton's based on Dunnam's Complaint, as drafted, would inevitably fall within the parameters of the indemnity agreement. This case, therefore, appears to be exactly like the paradigmatic illustration provided by the Fourth Circuit as guidance in *Piccinin*, it is a "suit against a third-party who is entitled to

4

absolute indemnity by the debtor on account of any judgment that might result against them in the case." 788 F.2d at 999.[1] Dunnam argues that Overton's and Sportsstuff are joint tortfeasors and that Overton's has independent liability, but that is not an accurate portrayal of the claims. Were this case to proceed against Overton's alone, any finding of liability on the part of Overton's would pass through to Sportsstuff. In effect, the proceeding against Overton's would unavoidably become a *de facto* proceeding against Sportsstuff and would frustrate the purposes of 11 U.S.C. § 362(a)(1). That is exactly the scenario that *Piccinin*'s holding was designed to avoid.

Additional factors weigh in favor of the Court utilizing its equitable discretion to stay proceedings against Overton's. Sportsstuff is an indispensable party in this matter and proceeding against Overton's alone prejudices the manufacturer.[2] Should a trial ensue without Sportsstuff, Dunnam's claims nonetheless dictate that the trial will center around Sportsstuff's design and manufacturing of the Wego Kite Tube. Sportsstuff will not be able to defend itself in this action, but will eventually be held liable for any judgment awarded through the indemnity agreement. Furthermore, Sportsstuff executives and employees will still be required to expend significant amounts of time testifying at depositions and trial which undermines the respite from litigation that § 362(a)(1) was intended to impose. *Piccinin*, 788 F.2d at 996, 998. Finally, judicial economy concerns indicate a stay is appropriate because proceeding against Overton's now would result in a second, nearly identical, litigation of the issues at a later date once Sportsstuff is able to

---

[1] Dunnam notes in his brief that unlike *Piccinin*, the indemnification agreement between Overton's and Sportsstuff is disputed. He is correct that the indemnification agreement is the subject of cross-claims between Overton's and Sportsstuff, but the Court is of the opinion that Sportsstuff is engaging in mere legal posturing. Unfortunately, the Court cannot make a determination regarding Sportsstuff's liability under the indemnity agreement without violating the stay imposed by § 362(a)(1).

[2] If circumstances were different such that Sportsstuff were not party to this action, the Court would undoubtedly find that "equity and good conscience" dictate it be joined before going forward. *See* Fed. R. Civ. P. 19.

proceed. Taking all of these factors into consideration, staying the proceedings against Overton's appears to be the most equitable action.

## IV. Conclusion

For the reasons stated above, Defendant Overton's motion is granted. This action is stayed in its entirety.

An appropriate Order will accompany this Memorandum Opinion.

                                                            /s/
                                           Henry E. Hudson
                                           United States District Judge

ENTERED this _23_ day of _January 2008_
Richmond, VA